UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ROSELEE BARTOLACCI, by and through its successor in interest, ROSEANN BARTOLACCI,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 24-cv-01156-WQH-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO CONDUCT LIMITED EARLY DISCOVERY TO ASCERTAIN "DOE" DEFENDANTS' IDENTITIES**<br><br>**[ECF No. 39]** |

Before the Court is the Plaintiff's November 11, 2024, *Ex Parte* Motion for Leave to Conduct Limited Early Discovery to Ascertain "Doe" Defendants' Identities ("Motion"). (ECF No. 39.) On November 13, 2024, Defendants County of San Diego, Ricardo Carlon, Sherry Esquivel, Macy Germono, Kelly Martinez, Paul Mata, Evangelina Reynoso, Diorella Rioveros, and Janine Sparks (hereinafter "County Defendants") filed an opposition to Plaintiff's Motion ("Opposition"). (ECF No. 41.) Having reviewed Plaintiff's Motion, County Defendant's Opposition, and all supporting documents, the Court **GRANTS IN PART and DENIES IN PART** the Motion for the reasons set forth below.

///

## I. BACKGROUND

On July 3, 2024, the Estate of Roselee Bartolacci, by and through its successor in interest Roseann Bartolacci ("Plaintiff"), filed a Complaint alleging claims under "42 U.S.C. § 1983 for deliberate indifference to Roselee [Decedent]'s serious medical needs, failure to properly train, supervise and discipline, and *Monell* municipal liability as well as claims under the [Americans with Disabilities Act], [Rehabilitation Act] and state law cause of action for negligence and a violation of the Bane Act." (ECF No. 39 at 4–5; *see* ECF No. 1.) Plaintiff brings these allegations against the County of San Diego, Kelly Martinez, Ricardo Carlon, Paul Mata, Evangelina Reynoso, Lauren Anderson, Macy Germono, Janine Sparks, David Christensen, Sherry Esquivel, Teresa Hurley, Lacey Beaston, Diorella Rioveros, Naphcare Correctional Health ("NCH"), and Does 1-55. (ECF No. 1.)

On August 30, 2024, County Defendants filed a Motion to Dismiss Plaintiff's complaint for failure to state a claim. (ECF No. 18.) Defendants NCH and Lauren Anderson also filed a Motion to Dismiss on August 30, 2024. (ECF Nos. 19; 20.) On September 3, 2024, Defendants Lacey Beaston and Teresa Hurley filed a Motion to Dismiss. (ECF No. 24.) Lastly, Defendant David Christensen filed a Motion to Dismiss on November 20, 2024. (ECF No. 42.) Plaintiff filed Oppositions to the above-mentioned motions to dismiss on September 30, October 1, and December 16, 2024, respectively. (ECF Nos. 29; 30; 31; 43.) Defendants filed Replies to Plaintiff's Oppositions on October 7, October 8, and December 23, 2024. (ECF Nos. 32; 33; 35; 45.)

In the instant motion, Plaintiff seeks leave to conduct discovery prior to the Rule 26(f) conference to learn the Doe Defendants' identities. (ECF No. 39.)

## II. LEGAL STANDARD

A party is generally not permitted to obtain discovery before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except [. . .] by stipulation, or by court order."). However, courts have made

exceptions to allow limited early discovery when there is good cause.  *See Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012) ("In the Ninth Circuit, courts use the good cause standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference.").  Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  In determining whether a party has shown good cause to grant expedited discovery, courts "commonly consider[ ]" the following non-exhaustive factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009) (internal quotation omitted); *see, e.g.*, *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F.Supp.3d 1068, 1076–77 (S.D. Cal. 2019) (applying the same factors); *Palermo v. Underground Solutions, Inc.*, No. 12-cv-1223-WQH-BLM, 2012 WL 2106228, at *2 (S.D. Cal. June 11, 2012) (same).

Consistent with this generally recognized exception to Rule 26(f), the Ninth Circuit has held that "'where the identity of the alleged defendant[ ] [is] not [ ] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (brackets in original) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Thus, in cases where plaintiffs are seeking to learn the identity of Doe defendants through early discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity so that the court can determine that the defendant is a real person or entity who can be sued in federal court; (2) describes all previous steps taken to identify and locate the defendant; (3) establishes that the suit could withstand a motion to dismiss; and (4) establishes that the discovery

requested is likely to lead to identifying information about the defendant that will permit service of process. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578–580 (N.D. Cal. 1999). These factors are considered to ensure the expedited discovery procedure "will only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service, and will prevent use of this method to harass or intimidate." *Id*. at 578.

### III. PARTIES' ARGUMENTS

Plaintiff contends that due to "limited informational resources causing genuine ignorance," defendants were named in the complaint under "Doe" pseudonyms "to preserve its claims against them." (ECF No. 39 at 6.) Plaintiff's complaint describes the following Doe defendants:

1. DOE 1 was the Sheriff's deputy who responded to the call about Roselee Bartolacci and/or arrested Roselee on or about April 6, 2023.

2. DOES 2-3 were the San Diego County Sheriff's personnel responsible for classification, receiving and screening Roselee Bartolacci, and identifying her serious medical needs, including her developmental disability, and assessing whether she was fit for admission to Las Colinas at the time of her arrest on or about April 6, 2023.

3. DOES 4-6 were the sworn staff (Sheriff's Department deputies), watch commanders, or other high-ranking staff who were responsible for placing Roselee Bartolacci in Administrative Segregation at Las Colinas, who allowed, condoned, ordered, or required her to remain in Administrative Segregation between April 6 and April 10, 2023, and who monitored her while in Administrative Segregation but failed to intervene or place her in housing suitable for her mental health needs.

4. DOES 7-27 were the nurses, mental health clinicians, psychiatrists, nurse practitioners, doctors, and all other medical personnel who worked at Las Colinas and who provided, or failed to provide, adequate psychiatric or medical care to Roselee Bartolacci.

5. DOES 28-40 were the deputies and/or medical providers responsible for conducting cell checks, monitoring and rendering emergency aid to Roselee Bartolacci while at Las Colinas.

> 6. DOES 41-55 were the supervisors, captains, commanders, and other high-ranking officials at the San Diego County Sheriff's Department or supervisors employed by Naphcare Correctional Health who were responsible for supervising, disciplining, and training subordinate individual defendants in this case and who were responsible for promulgating and approving all policies and practices in this case.

(ECF Nos. 1 at ¶¶ 23–28; *see also* 39 at 6–7.)

Plaintiff seeks the Court's leave to propound "narrowly tailored requests for production and interrogatories intended to identify the Doe Defendants described in the complaint." (ECF No. 39 at 13.) Plaintiff contends that "despite its efforts" it has been unable to "identify all those involved with [Decedent]'s care—or lack thereof—at Las Colinas." (*Id*. at 5.) Plaintiff argues that the medical records, autopsy report, and County's press release do not name the individuals categorized above. (*Id*. at 5–7.) Plaintiff highlights the fact that the "statute of limitations on [its] §1983 claims run[s] on May 29, 2025," as a reason for its request. (*Id*. at 5.) Plaintiff asserts that its Requests for Production Nos. 1 to 11 and Special Interrogatories Nos. 1 to 9 are "narrowly tailored for the purpose of identifying the Doe defendants" with each "crafted specifically" to achieve that result and Plaintiff "does not intend to overreach in its request." (*Id*. at 17.) Plaintiff also states that it is seeking "leave to take written discovery, not depositions." (*Id*.)

County Defendants contend that Plaintiff "has not explained the need to identify Does now, rather than during the normal discovery process, as the Federal Rules permit amendment of the Complaint, and this Court generally sets a last day to amend." (ECF No. 41 at 4 (emphasis in original).) County Defendants note that discovery has not begun and that the case is at a premature stage. (*Id*.) They argue that early discovery should be denied because (1) no preliminary injunction is pending; (2) the discovery requests are broad; (3) identifying Doe defendants can be done and typically is done during discovery; (4) the request is burdensome given the broad scope; and (5) these requests are sought months in advance of the Scheduling Order which would initiate Discovery. (*Id*. at 4–5.)

To illuminate the burdensome and broad nature of the requests, County Defendants point to the fact that the Plaintiff seeks production of the "homicide and [Internal Affairs] files as well as medical staffing information, custody staffing information, [Jail Population Management Unit] reports, identification of persons responsible for cell checks and sanitation, extensive video of decedent and the surrounding areas" as well as "general medical and custody staffing reports and reports about cell checks without limitation as to the area of the jail(s)." (*Id.*) County Defendants argue that "while identifying the deputy who responded to the 911 call and arrested [Decedent] is a narrow request, identifying the intake screening, medical screening and classification persons is more burdensome" and adding numerous additional low-level defendants is "excessive" and "illogical." (*Id.*)

## V. DISCUSSION

To determine whether good cause exists for early discovery, courts generally consider the following: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose of requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet*, 673 F.Supp.2d at 1067 (internal quotation omitted). Here, the Court finds that three of the five factors clearly support early discovery. As to the first factor, there is no preliminary injunction pending in this case, so the first factor weighs against allowing early discovery. *See* Docket. As to the second and third factors, as discussed in greater detail below, the Court finds that some of the Plaintiff's proposed discovery requests are narrowly tailored and serve the legitimate purpose of identifying unnamed Doe Defendants before the statute of limitations runs. Next, the Court is persuaded that Defendant San Diego County has much of the information sought readily available as a result of the multiple investigations into the death, Plaintiff's notice of tort claim, and Plaintiff's preservation request. (ECF No. 39 at 18.) Finally, Plaintiff's requests are made somewhat far in advance of the ordinary discovery process and do come before any Defendant has answered Plaintiff's complaint. However, County Defendants have responded to Plaintiff's complaint by filing a motion to dismiss

(ECF No. 18), a reply in support of their motion to dismiss (ECF No. 33), and an opposition to this Motion (ECF No. 41), so litigation is underway. Thus, the Court finds the final factor is neutral. Accordingly, the Court finds good cause for some limited early discovery.

Courts have identified factors for consideration specifically in the context of early discovery directed at the identification of potential defendants. In this context, the Court considers whether Plaintiff (1) identifies the Doe Defendants with sufficient specificity so that the Court can determine that the defendant is a real person or entity who can be sued in federal court; (2) describes all previous steps taken to identify and locate the defendants; (3) establishes that the suit could withstand a motion to dismiss; and (4) establishes that the discovery requested is likely to lead to identifying information about the defendants that will permit service of process. *See Columbia Ins. Co.*, 185 F.R.D. at 578-80.

First, the Court looks to whether the Plaintiff has identified the Doe defendants with sufficient specificity to enable the Court to determine that the Doe defendant is a real person subject to the Court's jurisdiction. *Columbia Ins. Co.*, 185 F.R.D. at 578. District Courts have found that a plaintiff may satisfy the first factor by demonstrating that the operative complaint details sufficient allegations of the events and individuals whom a plaintiff seeks to identify. *See, e.g.*, *Coreno v. Hiles*, 2010 WL 2404395, at *3 (S.D. Cal. June 14, 2010) (finding that the plaintiff satisfied the first factor by including detailed allegations against the Doe defendants in the operative complaint).

The County Defendants do not address this factor in their Opposition. The Court finds that Plaintiff describes most of the Doe defendants with adequate specificity in the complaint. (ECF No. 1 at ¶¶ 23-28.) Plaintiff identifies each category of Doe defendants by their job title or duties, their conduct as it relates to Plaintiff, and, wherever applicable, the date of their conduct. (*Id.*; *see also* ECF No. 39 at 6–7.) For most of the categories of Doe defendants, the complaint contains sufficient details to enable the County to identify the individuals.

Accordingly, the Court finds that Plaintiff has sufficiently identified certain Doe Defendants for the purpose of this analysis. *See Estate of Schuck v. County of San Diego*,

2023 WL 4055705, at *4 (S.D. Cal. June 16, 2023) (finding that the Plaintiff had established the first factor by describing the Doe defendants with sufficient specificity that they may be identified and served by referencing the dates and locations of the incidents); *see also Raiser v. San Diego County*, 2019 WL 4675773, at *2 (S.D. Cal. Sept. 25, 2019) (finding that the plaintiff satisfied the first factor by sufficiently identifying the times, dates, and locations of the unlawful actions in the operative complaint.)

Second, the Court evaluates whether Plaintiff has described prior attempts made to identify the Doe defendants in a good faith effort to locate and serve them. *Columbia Ins. Co.*, 185 F.R.D. at 579. County Defendants do not address this factor in its opposition. Plaintiff identifies the steps taken to try to identify the Doe defendants from the available documents, including medical records, the autopsy report and the County's press release. (ECF No. 39 at 10). Plaintiff has also endeavored to obtain the information informally through the meet and confer process with opposing counsel. (*Id*. at 7, 10; *see also* ECF No. 39-1 at 2.) Plaintiff further explains why the information available to Plaintiff has proven to be inadequate. (ECF No. 39 at 5–6, 10.) Accordingly, the Court finds that Plaintiff has made a good-faith effort to identify and locate the Doe defendants before filing the instant application. *See Raiser*, 2019 WL 4675773, at *2 (plaintiff made a good faith effort to identify the unnamed deputies when he contacted the clerk in the Records Department of the San Diego County Sheriff).

Third, the Court considers whether the lawsuit can withstand a motion to dismiss. *See Columbia Ins. Co.*, 185 F.R.D. at 579. The Court is persuaded that Plaintiff's allegations against the Doe defendants arguably could withstand a motion to dismiss. Although the County Defendants put forth arguments, set forth in considerably more detail in their motions to dismiss, why the Complaint should be dismissed, and this Court will not encroach on the purview of the District Judge to make that decision, the Court notes that this is not a situation where Plaintiff's complaint is frivolous or obviously meritless on its face. Accordingly, the Court finds that Plaintiff has made "some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing

specific identifying information of the person or entity who committed that act." *Columbia Ins. Co.*, 185 F.R.D. at 580.

Lastly, the Court will consider whether "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. As narrowed by the Court in the latter part of this Order, the Court finds that Plaintiff's discovery requests do not prejudice the County Defendants. The permitted requests are narrowly tailored, and County Defendants will not be unduly burdened to respond to them. The Court also finds that the potential harm to Plaintiff of being unable to preserve its rights and bring claims in this matter outweighs County Defendants' concerns.

For these reasons, the Court finds that Plaintiff can appropriately propound limited early discovery directed at identifying Doe defendants.

### A. Proposed Discovery Requests

Plaintiff seeks permission to propound multiple requests for production and interrogatories intended to identify the unnamed Doe defendants. Plaintiff argues that the requests are "narrowly tailored" and that "each has been crafted specifically" and "does not intend to overreach in its request." (ECF No. 39 at 17.) Plaintiff points to the fact that it is only "seek[ing] leave to take written discovery, not depositions" and that the County "likely completed an internal investigation" so "these documents are likely readily available for production" as evidence of this. (*Id.*)

#### 1. Special Interrogatories

Plaintiff seeks to propound the following Special Interrogatories on County Defendants:

> **Interrogatory No. 1:** IDENTIFY each San Diego County Sheriff's deputy who responded to the 911 call about Roselee Bartolacci on or about April 6, 2023.
>
> **Interrogatory No. 2:** IDENTIFY the San Diego County Sheriff's deputy who arrested Roselee Bartolacci at her residence on or about April 6, 2023.

**Interrogatory No. 3:** IDENTIFY each PERSON who conducted Roselee Bartolacci's intake screening when she was booked into Las Colinas on or about April 6, 2023, including, but not limited to, all personnel who conducted her medical screening and assessed that she was fit for admission into Las Colinas.

**Interrogatory No. 4:** IDENTIFY each PERSON who classified Roselee Bartolacci after she was booked into Las Colinas on or about April 6, 2023.

**Interrogatory No. 5:** IDENTIFY each PERSON who placed, or authorized the placement of, Roselee Bartolacci in Administrative Segregation on or about April 6, 2023.

**Interrogatory No. 6:** IDENTIFY each PERSON who approved, allowed, condoned, ordered or required Roselee Bartolacci to remain in Administrative Segregation between April 6, 2023 and April 10, 2023.

**Interrogatory No. 7**: IDENTIFY each PERSON who was responsible for monitoring Roselee Bartolacci and conducting CELL CHECKS of any cell Roselee was held in during the following time periods:

   (1) April 6, 2023 to April 11, 2023; and

   (2) May 28, 2023 to May 29, 2023.

**Interrogatory No. 8**. IDENTIFY each PERSON who was responsible for, or tasked with, performing hygiene checks on Roselee Bartolacci's cell from May 15, 2023 to May 29, 2023.

**Interrogatory No. 9**. IDENTIFY each PERSON who was responsible for, or tasked with, performing wellness checks on Roselee Bartolacci's cell from May 1, 2023 to May 29, 2023.

ECF Nos. 39 at 16–17; *see also* 39-1 at 16–17.

The Court finds that Plaintiff's requested Special Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, and 9 are narrowly tailored and would not create an undue burden on Defendants. The Special Interrogatories are narrowly tailored as to timing and merely seek the identities of individuals who had specific duties or interactions with Decedent. The requests are narrowly tailored to obtain identifying information.

In Special Interrogatory No. 6, Plaintiff asks County Defendants to "IDENTIFY each PERSON who approved, allowed, condoned, ordered or required" Decedent to "remain in Administrative Segregation between April 6, 2023, and April 10, 2023." (ECF Nos. 39 at 17; *see also* 39-1 at 16.) Special Interrogatory No. 6 is overbroad because being an employee in any role and not explicitly opposing the decision could potentially be viewed as "condon[ing]" or "allow[ing]" Decedent to remain in Administrative Segregation. The Court finds this request is not narrowly tailored to obtain the identities of unknown Doe defendants. However, the Court will allow the propounding of this modified interrogatory:

> IDENTIFY each PERSON who ordered or approved the order that Roselee Bartolacci remain in Administrative Segregation between April 6, 2023, and April 10, 2023.

Accordingly, the Court **GRANTS** Plaintiff's request to propound Special Interrogatories 1, 2, 3, 4, 5, 7, 8, and 9 as drafted and Special Interrogatory No. 6 as modified by the Court.

### 2. Requests for Production

Plaintiff also seeks to propound the following Requests for Production on County Defendants:

> **Request for Production No. 1:** The entire homicide investigation file RELATING TO the death of Roselee Bartolacci, including any and all DOCUMENTS and ELECTRONICALLY STORED INFORMATION, records, including audio, video, emails, reports, medical records, documents, and all witness statements (including audio or video recorded statements by witnesses).
>
> **Request for Production No. 2:** The entire Internal Affairs investigation file RELATING TO the death of Roselee Bartolacci, including any and all DOCUMENTS and ELECTRONICALLY STORED INFORMATION, records, including audio, video, emails, reports, medical records, documents, and all witness statements (including audio or video recorded statements by witnesses).

///

///

**Request for Production No. 3:** Any and all DOCUMENTS REFLECTING medical staffing schedules for both the day and night shifts at the Las Colinas Detention Facility on April 6, 2023, including all medical staff assigned to intake screening and the M.D. Sick Call List.

**Request for Production No. 4:** Any JPMU (Jail Population Management Unit) reports regarding Roselee Bartolacci's placement into Administrative Segregation on or about April 6, 2023.

**Request for Production No. 5**: Any and all videos and audio recordings in YOUR possession, custody or control RELATING TO Roselee Bartolacci, including, but not limited to, police radio transmissions, tapes/recordings of communications, dash cam video footage, body camera footage, video surveillance footage, and/or video surveillance footage and/or CCTV footage, including footage of inside any cells and videos of the hallways outside of the cells at the Las Colinas Detention Facility, of Roselee Bartolacci for the following time periods:

(1) The time Sheriff's deputies arrived at Ms. Bartolacci's residence to the time she was arrested and transported to the Las Colinas Detention Facility on April 6, 2023;

(2) The time Ms. Bartolacci was booked into the Las Colinas Detention Facility on April 6, 2023 to the time she left to go to the hospital on April 26, 2023;

(3) The time Ms. Bartolacci returned to the Las Colinas Detention Facility from the hospital on May 10, 2023, to the time she left to go to the hospital on May 18, 2023;

(4) The time Ms. Bartolacci returned to the Las Colinas Detention Facility from the hospital on May 18, 2023 to the time she left to go the hospital again on May 20, 2023; and

(5) The time Ms. Bartolacci returned to the Las Colinas Detention Facility from the hospital on May 21, 2023, to the time her body was taken out of the Las Colinas Detention Facility on May 29, 2023, following her death.

///

///

**Request for Production No. 6:** Any and all DOCUMENTS REFLECTING deputy staffing schedules, including, but not limited to, deployment logs, for the following time periods and locations:

(1) The day and night shifts in the Administrative Segregation Unit of the Las Colinas Detention Facility for the time period of April 6, 2023 to April 11, 2023; and

(2) The day and night shifts in the Women's Psychiatric Stabilization Unit ("WPSU") of the Las Colinas Detention Facility for the time period of May 28, 2023 to May 29, 2023.

**Request for Production No. 7:** Any and all reports, memoranda, or other DOCUMENTS RELATING TO or RELECTING any hygiene or sanitation check performed on any cell where Roselee Bartolacci was held between May 24, 2023 and May 29, 2023.

**Request for Production No. 8:** Any and all reports, memoranda, or other DOCUMENTS IDENTIFYING each PERSON responsible for conducting each hygiene and sanitation check on any cell where Roselee Bartolacci was held between May 24, 2023 and May 29, 2023.

**Request for Production No. 9:** Any and all reports, memoranda, or other DOCUMENTS RELATING TO or REFLECTING any CELL CHECKS performed on the cell where Roselee Bartolacci was held for the following time periods:

(1) April 6, 2023 to April 11, 2023; and

(2) May 28, 2023 to May 29, 2023.

**Request for Production No. 10:** Any and all DOCUMENTS related to CELL CHECK verification including all sign-in records and log-in information into any automated or electronic record system, or any handheld devices involving any CELL CHECKS conducted for the following time periods:

(1) April 6, 2023 to April 11, 2023; and

(2) May 28, 2023 to May 29, 2023.

///

///

**Request for Production No. 11:** Any DOCUMENTS, communications, charts, entries, records, materials or entries in JIMS or any computerized system REFERRING or RELATING TO any incomplete CELL CHECK or deficient CELL CHECK for the following time periods:

(1) April 6, 2023 to April 11, 2023; and

(2) May 28, 2023 to May 29, 2023.

ECF Nos. 39 at 13–16; *see also* 39-1 at 9–12.

While Plaintiff states that the requests are "narrowly tailored for the purpose of identifying the Doe defendants" and that "Plaintiff does not intend to overreach in its request" the Court finds that the requests are overbroad. (ECF No. 39 at 17.) As County Defendants argue, "Plaintiff seek[s] production of the homicide and [Internal Affairs] files as well as medical staffing information, custody staffing information, [Jail Population Management Unit] reports, identification of persons responsible for cell checks and sanitation, and extensive video of decedent and the surrounding areas" along with "more general medical and custody staffing reports and reports about cell checks without limitation as to the area of the jail(s)." (ECF No. 41 at 4.) Plaintiff admits that it has received medical records and the autopsy report, and County Defendants claim that Plaintiff has received Decedent's "voluminous medical records." (ECF Nos. 39 at 5, 10; 41 at 2.) Plaintiff states that the medical records from Las Colinas "only identify those who entered notes on Roselee's medical chart" and that the Jail medical records "maintain the names of practitioners who type in information into the computerized medical records and any care they provided" but if a practitioner was supposed to provide care but "neglected to [do so] and failed to enter any information into the system, Plaintiff would not be able to determine these facts by reviewing the medical records." (ECF No. 39 at 5.) Plaintiff has not established that it would be able to determine the above facts from the requested records to specifically identify Doe defendants.

The requests for production are overbroad and are not an effective or efficient way to identity the individuals responsible for allegedly neglectful care. For example, Request

for Production ("RFP") No. 3 asking for all documents reflecting medical staffing schedules, and RFP No. 11 asking for "any" incomplete or deficient cell check are so broad that they include information and individuals that are irrelevant to the case at hand. While the RFPs likely would produce relevant information about Plaintiff's claims, the Court finds them to be overbroad and not suited for early limited discovery regarding the identities of the Doe defendants. In short, rather than being narrowly tailored to get to the identity of Doe defendants, the requests seek broad discovery going to the merits of Plaintiff's claims. Moreover, Plaintiff should be able to get all of the information it needs to identify all of the Doe defendants from the approved interrogatories. Accordingly, the Court **DENIES** Plaintiff's request to propound Requests for Production.

## VI. CONCLUSION

Having found good cause for Plaintiff to conduct limited expedited discovery to ascertain the identity of the Doe defendants named in Plaintiff's complaint, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion. For the forgoing reasons, it is hereby ordered that Plaintiff may propound early interrogatories as set forth above.

**IT IS SO ORDERED.**

Dated: January 7, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge